UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIO NORIEGA, JUANA NORIEGA, and KAREN NORIEGA, | |
| Plaintiffs | Civil Action No. 06-1073 (PGS) |
| v. | |
| ALBERTO GONZALES, Attorney General MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; ANDREA QUARANTILLO, District Director, Newark District of the United States Citizenship and Immigration Services; DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | OPINION |
| Defendants | |

The government moves for summary judgment, claiming that INS's final determination that Plaintiff, Mario Noriega, should not be granted permanent residency is supported by substantial evidence. Plaintiff cross-moves, arguing that the determination was capricious and arbitrary, that it violates the due process clause and that the agency has misconstrued the statute on which the determination was based. As will be shown, Plaintiff's motion should be granted because INS's determination was not supported by substantial evidence.

**Factual History**

On January 12, 1997, Plaintiff, Mario Noriega, married Debra Torres (R. 21) and on February 20, 1997, Torres filed a Form I-130 with the Vermont Service Center of the INS (R. 10). This form

1

is submitted by the "immediate relative" of an alien who is in the United States and who wishes to become a lawful permanent resident. (R. 2.) The form erroneously indicated that Mr. Noriega would be filing a Form I-485 (which the alien is required to file in support of his application) in Lima, Peru. (See R. 11.) One month later, on March 28, Torres re-filed another I-130 and Noriega filed an I-485 with the Newark District Office. (R. 3).

While this application was pending, Noriega and Torres had marital difficulties. (See R. 52.) Noriega claims that at one point the two separated, but that Torres returned to their household on November 29, 1997. (R. 52.) The government claims that on November 25, 1997, INS agents interviewed Torres in connection with the investigation of an "arranger" who was in the business of setting up fraudulent marriages to evade immigration laws. (R. 23.) During the interview, Torres maintained that she promised to marry Noriega, and to file the form I-130 in return for money. (R. 23.) This interview occurred a few days before Noriega and Torres were scheduled to appear (in December, 1999) for an adjustment of status interview with INS. (Pl.'s Br. 6.) Noriega claims that Torres became very ill the day before the interview, and that he went to the INS office to request that the appointment be rescheduled. (R. 52, 196.) INS did not grant the rescheduling request and denied the entire application for permanent residency because of Noriega's failure to appear (R. 27) Noriega had no opportunity to submit any reply about his marriage to Torres at this hearing.

Noriega contends that his marriage with Torres fell apart in July of 1998, partly because Torres had developed drug and alcohol problems. (R. 52.) Although the two did not immediately divorce, Torres relocated to her parents' house, and she and Noriega led separate lives. (R. 52.) On August 25, 1998, Torres again met with INS officers and this time made a written statement that her marriage with Noriega was fraudulent. (R. 30.)

2

Noriega eventually divorced Torres on March 28, 2001, so that he could marry another woman, Juana Sanchez. (R. 4.) Noriega and Sanchez married on April 16, 2001 (R. 45) and applied to adjust his status to permanent residency on May 7, 2001, by filing an I-130 and I-485 with the Newark District Office of the INS (Compl. 3-4, R. 4). On August 20, 2001 the INS served Sanchez with a notice of an intent to deny her Form I-130, citing Section 204(c) of the Immigration and Nationality Act (8 U.S.C. §1154c) which states that no petition for permanent residence shall be approved if it is determined by the Attorney General that the alien applying had previously entered into a marriage for the purpose of evading immigration laws. (R. 259.) The letter went on to cite Torres' interview with INS on November 25, 1997 and the statement she made on August 25, 1998 as evidence of the fraudulence of her marriage to Noriega (R. 259), but did not provide any copies or records of these statements to Sanchez (Pl.'s Br. 8). This appears to be the first time that Noriega learned of Torres's statements about their marriage.

The notice indicated that Sanchez had 30 days in which to provide sufficient evidence to rebut the determination that Noriega's marriage to Torres was fraudulent. (R. 259.) In response, Sanchez submitted a variety of materials, such as tax returns, photographs, and bills encompassing hundreds of pages proving that Noriega's relationship with Torres had been legitimate. (R. 264-373.) Most significantly, Sanchez also submitted a notarized letter signed by Torres asserting that her marriage with Noriega was not fraudulent, and that she had never been interviewed by or signed any statements for INS (Torres Recanting Statement). (R. 263.) The letter did not address whether any money was exchanged in consideration of the marriage. (See R. 263.)

The Newark District Office decided that this evidence was insufficient to rebut its determination, and that the petition to change Noriega's status be denied. (R. 375-76.) The

3

Department noted that because the Torres Recanting Letter did not include any way for the agency to contact Torres to verify her Recanting Statement, the letter was given "no weight." (R. 376.) The remaining evidence, showing proof of marriage was likewise summarily dismissed by the Department because the proof "can be fabricated to give the appearance of cohabitation;" and thus, was insufficient to rebut the statements Torres made to the INS in the late 1990s. (R. 376.) Sanchez appealed this decision to the Board of Immigration Appeals on April 4, 2002 (R. 378), arguing that the District Office had improperly disregarded the Torres Recanting Statement and the proof of marriage documents. (R. 379-80) She contended that the agency had the obligation to investigate the validity of the Torres Recanting Statement and should have given the proffered marriage documents some consideration. (R. 380.) This appeal was denied on April 25, 2003 in a single sentence without an opinion. (R. 382.) Soon after, Noriega was placed in removal proceedings.[1]

---

[1] Before these proceedings were complete, Noriega's daughter Karen (a US citizen and now an adult) submitted her own I-130 petition on behalf of her father on June 10, 2004 to the Vermont Service Center of the USCIS, the successor agency of the INS. (R. 395.) This petition was initially approved on August 21, 2004 (R. 395), but after reviewing Noriega's complete file the agency issued a notice of intent to revoke approval on April 4, 2005. (R. 398-99). This notice was very similar to the one Sanchez received three years earlier, in that it cited 204(c) of the Immigration and Nationality Act and Torres's two statements to the INS that her marriage with Noriega was fraudulent. (See R. 259, 398-99.) The notice also made mention of a new piece of evidence that the INS had only uncovered in 2002. On April 15, 1997, Torres had married another alien named Simon Hernandez and submitted an I-130 on his behalf shortly thereafter. (R. 390.) This "marriage" occurred while she was still married to Noriega and less than one month after she submitted her second I-130 in support of Noriega's change in status. On May 24, 2002, Torres made a sworn statement that she had married both men only so that they could receive green cards and accordingly she withdrew all applications made on their behalf. (R. 390.) Karen was given the opportunity to offer rebuttal evidence, but submitted it two days beyond the thirty day deadline indicated by the notice, and the evidence she provided largely duplicated that which Sanchez had submitted in her own rebuttal. (R. 7-8.) The agency went ahead with the revocation, noting that the rebuttal evidence had not been considered because it was not received within the thirty day time limit. (R. 462.)

(Pl.'s Br. 10.)

**Procedural History**

As previously noted, Noriega filed a complaint with this Court on March 8, 2006, alleging that the Board of Immigration Appeals' determination of fraud in his marriage was arbitrary and capricious, was made in a manner contrary to the consent decree in Stokes v. INS, and violated the due process clause of the Fifth Amendment.[2]

The government moved for summary judgment on the remaining counts on October 1, 2008. In its brief, the government argues that the BIA's decision was supported by substantial evidence. Noriega submitted a brief opposing the government's motion and cross-moved for summary judgment on November 18, 2008.

**Discussion**

Sanchez's petition on behalf of Noriega was denied by the Board of Immigration Appeals (BIA) pursuant to Section 204(c) of the Immigration and Nationality Act ( 8 USC 1154(c)), which states that:

> no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter the marriage for the purpose of evading the immigration laws.

---

[2] The government also argued that the Court had no jurisdiction to review the USCIS's denial of Karen Noriega's Form I-130. On February 16, 2007, this Court granted the motion in regards to the allegations concerning Karen Noriega's petition and denied it in regards to the allegations relating to Sanchez's petition.

This statute does not require that an alien be convicted of or prosecuted for entering into a sham marriage for a future application to be barred.  Instead, it only requires that the Attorney General determine that such a marriage was entered for the purpose of evading immigration law at some point in the past. Guidance as to how this determination is to be made is found in 8 CFR 204.2(a)(1)(ii):

> Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

Thus, INS's (now USCIS's) normal procedure is for the District Director of each field office to evaluate the files of alien applicants and determine whether they are in violation of 204(c) . This determination must be based on "substantial and probative evidence" which is "contained in the alien's file."[3]  Review of the District Director's determination is carried out by the BIA.

This Court's review of the BIA's determination is performed under a substantial evidence standard.  See Dia v. Ashcroft, 353 F.3d 228, 247-48 (3d Cir. 2003). Generally, "[t]he substantial

---

[3]Although 204(c) was enacted as a part of the Immigration Marriage Fraud Amendments of 1986, the term "fraud" does not appear in the statute and does not seem to play a part in determining whether an alien has entered, or attempted to enter, a marriage for the purpose of evading immigration laws.

6

evidence standard has historically been, and continues to be, the standard governing the relationship between administrative agencies and courts of review". Id at 248. For evidence to be substantial, it must be:

> more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' . . . and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939) (internal quotations omitted). The Third Circuit has repeatedly used this standard to evaluate INS and USCIS determinations, and has provided its own explication of the standard:

> The question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record. If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence.

Dia, 353 F.3d at 249. Although this standard is deferential to agency decisions, the examples of the Third Circuit overturning decisions of the Board of Immigration Appeals are legion. See, e.g., Lusingo v. Gonzales, 420 F.3d 193, 200 (3d Cir. 2005); Kim v. Ashcroft, 95 Fed. App'x. 418, 425 (3d Cir. 2004); Archvadze v. Ashcroft, 92 Fed. App'x. 925, 930 (3d Cir. 2004).

Here, the BIA's determination that Noriega's marriage to Torres was an evasion of immigration laws was not based upon substantial evidence. As the BIA's decision was an affirmation without opinion of the Newark Field Offices's initial determination, this Court must review the reasoning employed in that first agency action.[4] See, e.g., Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). This reasoning is contained in two documents: the notice of intent to deny that INS sent to Sanchez on August 20, 2001; and the denial notice dated April 4, 2002. Both documents indicate that the only evidence that INS relied on were two statements that Torres made to INS agents in the late 1990s in which she claimed that her marriage to Noriega was entered into for the sole purpose of evading immigration laws.[5] It is significant that each statement was made during times of marital difficulty. The first occurred during a period when the two were separated, and the second occurred soon after the couple had permanently lived apart. Noriega has also stated that Torres was abusing drugs and alcohol during the time these statements were made.

Although these statements provided evidence had they been left un-refuted, the rebuttal evidence submitted by Sanchez called these statements into question. Sanchez submitted hundreds of pages of bills, photographs, and other forms of written documentation establishing the authenticity of Noriega's marriage to Torres, as well as a signed and notarized statement by Torres that her marriage with Noriega was "true" and that she had never "been interviewed or signed any statements" for INS agents (Torres Recanting Statement). Rather than undertake any kind of inquiry

---

[4] The determination was made by Russel W. Owens, who was then the Supervisory Adjudications Officer responsible for overseeing all applications for adjustment of status at the Newark Field Office.

[5] The first statement was made on November 25, 1997. INS agents interviewed Torres in connection with an investigation of Jesus Pascual Cigollen, whom INS suspected of arranging sham marriages. Torres claimed in the interview that Noriega had agreed to pay Cigollen $5000 in consideration of arranging the marriage to Torres. The second statement was made on August 25, 1998. Here, Torres signed a typewritten statement simply stating that the marriage was only entered into to evade immigration laws and that she withdrew any applications on Noriega's behalf.

8

that might reconcile the Torres Recanting Statement with the two fraudulent marriage statements, the Field Office chose to disregard the Torres Recanting Statement writing: "[t]his statement has been give [sic] no weight in that it contains neither the address or the phone number of the affiant, Ms. Torres, thereby preventing the Director from verifying the statement or cross examining the affiant." The remaining documentary evidence of the marriage was dismissed as that which "can be fabricated to give the appearance of cohabitation."

The failing of the Newark Field Office's determination was to disregard without any analysis both the Torres Recanting Statement and the facts presented to show the validity of the marriage. To disregard the Torres Recanting Statement because it did not contain contact information is unreasonable. An agency as large as the INS has the resources and wherewithall to contact Torres on its own, or it could have requested Sanchez and Noriega to locate Torres. So long as contradictory statements co-exist, a decision-maker must determine which statement deserves merit. The fact finder must assess the demeanor and credibility of Torres and Noriega to determine whether their marriage was a sham. The decider of fact must determine the facts based upon Torres' demeanor and credibility as analyzed at a hearing. For example, Torres may have been coerced or threatened when making statements that the marriage was fraudulent, or may have been on drugs or alcohol. Such a condition could undermine the credibility of Torres' original statement. Lack of contact information is insufficient evidence to discard the Recanting Statement. The more logical approach would have been to hold a hearing on the credibility issue rather than deciding on the papers. Although this standard is deferential to the agency, the is a case where a court can find that a determination was improper. An agency must always, for example, "examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts

9

found and choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). The Third Circuit has on multiple occasions found that the very body at issue here, the BIA, has not lived up to this standard.[6] See Yun Mei Zhou v. AG of the United States, 305 Fed. App'x. 865, 868-69 (3d Cir. 2009); Myat Thu v. AG of the United States, 510 F.3d 405, 415 (3d Cir. 2007); Sotto v. United States INS, 748 F.2d 832, 837 (3d. Cir. 1984); Ravancho v. INS, 658 F.2d 169, 176-77 (3d Cir. 1981). It has also articulated a specific standard for a court to use when reviewing whether the BIA has properly considered all of the evidence submitted to it:

> If the administrative record fails to reveal that such evidence has been fairly considered, the proper course is to remand the case to the INS so that the Service may evaluate such evidence and consider its effect on the application as a whole . . . . To determine whether the administrative action was arbitrary, the courts must be apprised why evidence, relevant and persuasive on its face, was discredited.

Sotto, 748 F.2d at 837. Accord, Jing Shu Jiang v. Gonzales, 219 Fed. Appx. 195, 198-99 (3d Cir. 2007); Eshak v. AG of the United States, 187 Fed. App'x. 251, 254 (3d Cir. 2006).

In the present matter, the BIA did not "fairly consider" the Torres Recanting Statement. The BIA's decision to disregard the Torres Recanting Statement because it "contain[ed] neither the address or the phone number of the affiant," leaves only one alternative. That is to remand the case to the Director for fair consideration. See generally, Sukwanputra v. Gonzales, 434 F.3d 627 (3d Cir. 2006). For this reason, the decision to deny Sanchez's petition was not based upon substantial evidence and is remanded for further proceedings.

---

[6] The government relies heavily on Ghaly v. INS, 58 F. 3d 1425, 1430-31 (7th Cir. 1995). My review of the caselaw is that a more in depth review and analysis of the facts submitted is required in the Third Circuit.

Secondly, the comment by the decider of fact that the documents proving the marriage was valid "can be fabricated to give the appearance of cohabitation" oversimplifies the issue. The proofs submitted were carefully compiled by an attorney on behalf of Mr. Noriega. To say that such work is fabricated requires a substantial and in depth review of the evidence. One can not evaluate such evidence by issuance of a curt, overly simplistic finding that it was "fabricated."

As such, this matter should be remanded for a fair consideration of the proofs.

The remaining arguments raised by Noriega regarding the constitutionality of immigration procedures and the proper construction of section 204(c) lack sufficient merit for an in-depth discussion in a written opinion.

Conclusion

For the foregoing reasons, Plaintiff's cross-motion for summary judgment is granted, and Defendants' motion for summary judgment is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

August 6, 2009